# 24-1992

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

JILL GATTO

          Plaintiff/Appellant

   vs.

JOHNSON & JOHNSON SERVICES, INC.

          Defendant/Appellee.

On Appeal from the United States District Court for the Western District
of Pennsylvania
(D.C. Civil No. 2:23-cv-16077)
District Judge: The Honorable William S. Stickman, IV

## BRIEF OF PLAINTIFF-APPELLANT

Counsel of Record for Plaintiff-Appellant
James L. Welsh, III, Esquire
PA I.D. No: 58790
The Welsh Law Group, LLC
3875 Franklintowne Court
Suite 130
Murrysville, PA 15668
724-519-2122 – Phone
724-519-2097 – Fax
e-mail: jwelsh@thewklaw.com

# TABLE OF CONTENTS

Table of Contents……………………………………….. i

Table of Authorities…………….…................................. ii, iii

Jurisdictional Statement….....….…………………………….. 1

Questions Presented as Summary of Argument……………………………….. 2

Statement of the Case……………………………….. 3

 a. Nature of the Case………………………. 3

 b. Statement of Facts…………………….. 3

 c. Proceedings Below………………….. 5

Standard of Review………………………………….6

Argument…………………………………….. 7

 a. Legal Framework………………………….. 7

 b. The District Court erred in holding that Gatto failed to allege a sincerely held religious brief………. 10

  (1.) The District Court improperly construed the Complaint against Gatto………………….. 10

Conclusion……………………………………. 20

Certificate of Compliance…………………………………….21

Case: 24-1992 Document: 15 Page: 2 Date Filed: 08/05/2024

# TABLE OF AUTHORITIES

Case: 24-1992    Document: 15    Page: 3    Date Filed: 08/05/2024

CASES                                                                Pages

Ashcroft v. Iqbal, 556 US 662, 678 (2009)................................6

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)...............6

Buon v. Spindles, 65 F.4th 64, 85 (2d Cir. 2023)..................... 6

Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74
(1977)..............................................................................8

Groff v. DeJoy, 600 U.S. 447, 453-454 (2023).......................8, 9, 10

Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006)............8

Harper v. Virginia Dept. of Tax., 509 U.S. 86, 90 (1993)...........9

Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)..............10

Blackwell v. LehighValley Health Network, No. 22-3360,
2023 WL 362392, at 8.......................................................12

Giurca v. Bon Secours Charity Health Sys., No. 23-200,
2024 WL 763388 at *1 (2d Cir. Feb. 26, 2024)..........................13

Billings v. Murphy No. 22-2010, 2024 WL 444727 at
*3 (2d Cir. Feb 6, 2024)......................................................13

Welsh v. United States 398 U.S. 333 342 (1970).......................14

United States v. Seeger, 380 U.S. 163 (1965)...........................14

Langer v. Hartland Board of Education, 3:22-cv-1459
(JAM), 2023 WL 6140792 (D.Conn. Sept. 20, 2023)................15, 16

Vasquez v. City of New York, 22-cv-5068(HG), 2024
WL 1348702 at *6 (E.D.N.Y. Mar. 30, 2024)...........................16

EEOC v. Union Independiente de la Autoridad
De Acueductos Y Alcantarillados De Puerto Rico
279 F.3d 49, 56 (1st Cir. 2002)................................................17, 19

Thomas v. Review Board of Indiana Employment
Security Division 450 US 707, 714, 101 S. Ct. 1425,
67 6.Ed.2d 624 (1981)........................................................17

Ackerman v. Washington, (6F.4th 170, 180-81)(6th Cir.
2021).........................................................................17

Dixon v. The Hallmark Co., Inc., 677 F.3d 849, 855 (11th Cir.
2010).........................................................................19

Grayson v. Schuler, 666 F.3d 450, 454 (7th Cir.
2012)(Posner,J.).............................................................17

Moussazadeh v. Texas Department of Criminal Justice,
703 F.3d 781, 791 (5th Cir. 2012)........................................ ..17

Scafidi v. B. Braun Med., Inc., No. 8:22-CV-2772-VMC-TGW,
2024 WL 184258 (M.D. Fla. Jan. 17, 2024)...........................18, 19

Finkbeiner v. Geisinger Clinic, 623 F. Supp. 3d 458,
465 (M.D. Pa. 2022)..........................................................18

# JURISDICTIONAL STATEMENT

This is an Appeal from the Memorandum Opinion and Order entered April 29, 2024 of the US District Court for the Western District of Pennsylvania (William S. Stickman, IV, D.J.) granting Defendant's Motion to Dismiss Plaintiff, Jill Gatto's claim in the Title VII action challenging the denial of religious accommodations to Johnson & Johnson's vaccination mandate. This Court has jurisdiction of this Appeal pursuant to 28 U.S.C. §1291, because this is an Appeal from a final decision of the District Court.

Case: 24-1992    Document: 15    Page: 5    Date Filed: 08/05/2024

# QUESTIONS PRESENTED AND SUMMARY OF ARGUMENT

1. Whether the District Court erred in granting Johnson & Johnson's Motion to Dismiss Under FRCP(12(b)(6).

> Yes. The District Court improperly construed the Complaint and made factual finding against Gatto.

2. Whether the District Court erred by resolving disputed questions of fact in Johnson & Johnson's favor to hold that Ms. Gatto had not presented a prima facie case of having a sincere religious belief that prevented vaccination and testing.

> Yes. The District Court erred by resolving disputed issues of fact to hold that Ms. Gatto failed to present a prima facie case of having a sincere religious belief that prevented vaccination and testing.

2

# STATEMENT OF THE CASE

## A.    NATURE OF THE CASE

This is an action for religious discrimination violation of Title VII of the Civil Rights Act of 1964 on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objections to a mandatory covid 19 vaccination/testing policy, wrongfully denied her requested religious exemptions and as a result illegally terminated her employment. Plaintiff is not challenging the legal validity of the underlying covid 19 vaccination policy. Rather, Plaintiff is asserting her individual right to a reasonable accommodation to the policy, which is guaranteed by Title VII. Defendant moved to dismiss Plaintiff's claim which was granted by the District Court.

## B.    STATEMENT OF FACTS

The Amended Complaint provides a detailed chronology of the events in this case. The essential facts are as follows:

Gatto was employed by Johnson & Johnson as an executive cardiovascular sales specialist. Gatto was notified that Defendant was mandating the covid 19 vaccine effective October, 2021 (Amended

3

Complaint ¶3).

Gatto, a lifelong devout member of the Christian faith, submitted a request for religious exemption on August 11, 2021 (Amended Complaint ¶¶5, 6 and Exhibit "1"). Plaintiff was extensively interviewed by Defendant's Human Resource Department on August 17, 2021 and August 21, 2021. (Amended Complaint ¶6).

On August 25, 2021, Plaintiff was notified that her religious exemption to the vaccine was granted, but she would be required to mask and submit to daily nasal swab testing. Plaintiff submitted a religious exemption request from nasal testing as it conflicted with her sincerely held religious beliefs to not inject foreign substances in her body (Amended Complaint ¶¶8, 9 and Exhibit "2").

Plaintiff had attempted to explain her religious beliefs and why nasal testing violated her faith on August 27, 2021, but the Human Resource Department refused to listen because Human Resource Department did not understand anything "medical." Plaintiff was instructed to call occupational health and speak to Cindy. Plaintiff left a message with occupational health as directed but never received a return call (Amended Complaint ¶9).

Plaintiff was then terminated with no reason given despite Defendant having a policy that contemplated exemptions for both vaccination and testing. (Amended Complaint ¶9 and Exhibit "3").

Despite having been granted a religious exemption from the vaccine, and having a policy that contemplates exemptions from both vaccination and testing, Defendant nevertheless terminated Plaintiff without discussing reasonable accommodations which Defendant's policy contemplated in the form of enhanced PPE or respirators, changes to work schedules, job task and/or work environment (See ¶5 of Exhibit "3" attached to the Amended Complaint, ). In fact, Plaintiff was never given a reason for her exemption request denial from nasal testing and Defendant never engaged in the interactive process to discuss reasonable accommodations (See ¶¶6-8 of Exhibit "3" attached to the Amended Complaint).

Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, challenging Plaintiff's religious beliefs as not being sincerely held. Defendant's Motion to Dismiss was granted by the Honorable William S. Stickman, IV and this timely Appeal followed.

# STANDARD OF REVIEW

Under Rule 12 (b)(6), courts construe the complaint in the light most favorable to the Plaintiff, presume the truth of all factual assertions and draw every inference in favor of the Plaintiff. qv. Iabal, 556 US 662, 678 (2009). To survive a motion to dismiss, the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) [parallel citation omitted], i.e., the pleaded facts must "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft at 678 [ parallel citation omitted].

Importantly, "at the motion to dismiss stage, the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e. whether Plaintiffs allege enough to nudge [] their claims across the line from conceivable to plausible." Buon v. Spindles, 65 F.4th 64, 85 (2d Cir. 2023).

At the pleading stage, an employee seeking antra accommodation in the form of an exemption from the employer's vaccine mandate must

allege facts plausibly permitting an inference that some "aspect[]"of the request is based upon the employee's "religious observance and practice" or "belief." 42 U.S.C. §2000e(j). The EEOC has likewise emphasized that a religious objection to a workplace requirement may incorporate both religious and secular reasons. See U.S. EEOC, What You Should Know About Covid 19 and the ADA, the Rehabilitation Act, and other EEO Laws (2023).

## ARGUMENT

### A. LEGAL FRAMEWORK

Title VII declares it unlawful, inter alia, "for an employer...to discharge any individual...because of such individual's ... religious... 42 U.S.C. §2000e-2(a)(1). Title VII broadly defines "religion to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. §2000 e(j.). As the Supreme Court recognized nearly 50 years ago: "The intent and effect of this definition was to make it an unlawful employment practice...for an employer not to make reasonable accommodations,

short of undue hardship, for the religious practices of his employees..."

<u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 74 (1977); <u>See also</u>,

<u>Groff v. DeJoy</u>, 600 U.S. 447, 453-454 (2023) ("Title VII of the Civil

Rights Act of 1964 requires employers to accommodate the religious

practice of their employees unless doing so would impose an undue

hardship on the conduct of the employer's business.") (internal

quotation marks and citations omitted.)

To make out a prima facie case of failure to accommodate under

Title VII, employees "must show that (1) they held a bona fide religious

belief conflicting with an employment requirement; (2) they informed

their employers of this belief; and (3) they were disciplined for failure to

comply with the conflicting employment requirement." <u>Baker v. Home</u>

<u>Depot</u>, 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks and

citation omitted).

Once a prima facie case is established by the employee, the

employer "must offer him or her a reasonable accommodation, unless

doing so would cause the employer to suffer an undue hardship." <u>Baker</u>,

445 F.3d at 546 (citation omitted); see also 29 C.F.R. §1605.2(c) ("After

an employee...notifies the employer...of his or her need for a religious

accommodation, the employer… has an obligation to reasonably accommodate the individual's religious practices. A refusal to accommodate is justified only when an employer…can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation.").

In <u>Groff v. Dejoy</u>, the Supreme Court explained that "undue hardship" under Title VII means "a burden [that] is substantial in the overall context of an employer's business." 600 U.S. at 468; <u>id</u>. at 470 ("an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business"). In <u>Groff</u>, the Supreme Court rejected the "more than de minimis" standard previously applied by lower courts as an erroneous interpretation of the Court's decision in <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63 (1977). Accordingly, the "more than de minimis" standard does not apply to the case at bar. See <u>Harper v. Virginia Dept. of Tax.</u>, 509 U.S. 86, 90 (1993) ("this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision").

Determining whether accommodating an employee's religious

9

beliefs and practices would constitute an undue hardship requires an "fact-specific inquiry." <u>Groff</u>, 600 U.S. at 468. "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." <u>Groff</u>, 600 U.S. at 470-71 (internal quotation marks and citation omitted).

## I. The District Court Improperly Construed the Complaint Against Gatto.

In holding that Gatto failed to allege a sincerely held religious belief the district court violated a fundamental principle that in a Motion to Dismiss, the court must construe plaintiffs' complaint liberally accepting all factual allegations in the complaint as true and drawing all reasonable inferences in plaintiff's' favor. <u>Holmes v. Grubman</u>, 568 F.3d 329, 335 (2d Cir. 2009).

When the complaint is construed fairly in Gatto's favor, she has alleged a valid religious objection to both the covid 19 vaccine and nasal testing. In fact, she has alleged many valid sincerely held religious beliefs against both the vaccine and testing (See Amended

Case: 24-1992     Document: 15     Page: 14     Date Filed: 08/05/2024

Complaint, ¶¶ 6, 8, 9 10, 12, Exhibits "1", "2" and "3" ) To complicate

things even more, Defendant's human resource representative , Vickie

Howard, was told about Gatto's objection to nasal testing on August 17,

2021 and August 19, 2021 and was told that Ms. Howard does not

understand "medical" and that Gatto needed to contact Cindy at

Occupational Health who never returned Gatto's call. (Amended

Complaint ¶¶6, 8, 9, 10 Exhibits "1" "2" and "3"). Gatto was never

given the opportunity to explain her objection to nasal testing because

Defendant did not respond.

To complicate things even further, the district court took it upon

itself to dissect Gatto's letters and entirely misconstrued her objections

to conclude that Gatto did not have a sincerely held religious belief

against nasal testing. The court draws this conclusion because Gatto

submits to the withdrawal of blood for tuberculosis testing and that the

insertion of a needle somehow negates Gatto's religious beliefs against

nasal testing. This is directly contrary to Plaintiff's objection. It is not

the insertion of a needle to withdraw blood that was placed in her body

by God, it is the insertion of foreign object that contains foreign

material on the end of the nasal swab that Gatto objects to. Like the

11

vaccine, to which Gatto received an exemption, the material on the nasal swab is the same injection of the foreign material as the injection of foreign material into her body. This insertion of foreign material is entirely different than having a sterile needle inserted to extract blood for testing. The blood being extracted was put in her body by God. The sterile needle not leaving any foreign material.

The district court took great pains to find a way to conclude that Gatto's belief was "more" an isolated moral teaching as opposed to a comprehensive system of beliefs about fundamental or ultimate matters. Blackwell, 2023. WL 362392, at 8). In reaching this conclusion, the district court erred in construing the complaint in a light most favorable to Gatto. At the motion to dismiss stage, the court erred in making credibility determinations which were unfavorable to Gatto. Gatto has more than pled a plausible claim for religious discrimination under Title VII.

Gatto is being held to a standard of explaining her religious beliefs in the form of a letter or to people who did not understand or did not return her phone call seeking to explain and expound upon her religious objection to nasal testing. To reward the Defendant at the

12

Motion to Dismiss stage because it was uncapable or unwilling to engage in the interactive process to discuss Gatto's religious beliefs against the nasal testing flies in the face of the spirit and the intention of Title VII.

When the Complaint is construed fairly in Gatto's favor, as it must be on a motion to dismiss, she has alleged a valid religious objection to the Covid 19 vaccines under Gatto's faith in the Christian tradition that my body is the temple of the Hold Spirit and that to inject medical products that were not created by God himself is unholy and disrespectful to his temple. (See Plaintiff's Amended Complaint, ¶ 18, Exhibit "1" and "2").

As such, this is a plausible religious belief that satisfies Plaintiff's "minimal burden" to allege a prima facie case. See, Giurca v. Bon Secours Chairty Health Sys., No. 23-200, 2024 WL 763388 at *1 (2d Cir. Feb. 26, 2024); Billings v. Murphy No. 22-2010, 2024 WL 444727 at *3 (2d Cir. Feb 6, 2024).

Granted, Gatto's original exemption letter may have contained both religious and non-religious elements. But the mere fact that a plaintiff seeking accommodation expresses a mixture of religious and

13

non-religious concerns does not mean she does not have valid religious beliefs or that she is disqualified from protection under Title VII.

Although the Supreme Court has not addressed this issue in the Title VII context, the court's seminal conscientious objector cases underscore that a person can assert a valid religious objection even if she also holds strong secular opinions. See Welsh v. United States 398 U.S. 333, 342 (1970) (plurality opinion) (explaining that defendant asserted valid religious objection to military draft although objection "was undeniably based in part on his perception of world politics"; conscientious objector status does not "exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy"); see also id. (explaining that in United States v. Seeger, 380 U.S. 163 (1965), "Seeger's views had a substantial political dimension"). Given the broad definition of "religion" under Title VII, the same result should hold in reasonable accommodation cases. Consequently, just because Gatto's exemption letter mentioned other reasons for objecting to the Covid 19 vaccine and testing does not negate her religious objection to

the policy based on her Christian beliefs which must be accepted as true at this stage of the proceeding.

In the case at bar, the district court disregarded Gatto's explanation how the insertion of a nasal swab with foreign matter conflicts with her religious beliefs that her body is a temple of the holy spirit and how she cannot knowingly ingest [] anything through a process that bypasses the normal detoxification pathway.

Nevertheless, instead of accepting that Gatto was asserting a religious objection to Defendant's covid 19 vaccination and testing policy, the district court made factual findings as to Gatto's faith stating that Gatto's objection to the vaccination policy "actually is based on an isolated moral teaching. "The district court departed from its role at the motion to dismiss stage by impermissibly drawing inferences against Gatto."

The proper 12(b)(6) analysis of a plaintiff's religious accommodation claim is illustrated in <u>Langer v. Hartland Board of Education</u>, 3:22-cv-1459 (JAM), 2023 WL 6140792 (D.Conn. Sept. 20, 2023). The plaintiff in <u>Langer</u> was a public elementary school teacher who was fired after she refused to comply  with the state's covid 19

Case: 24-1992     Document: 15     Page: 19     Date Filed: 08/05/2024

vaccination or test requirement. Id. At *1. She asserted constitutional and statutory challenges to her termination. With respect to her statutory religious accommodation claims, the district court acknowledged that there were reasons for the defendant "to be skeptical of Langer's claim that she has a religious objection to both the Covid 19 vaccine and the related testing requirements," but held that such doubts "do not warrant dismissal of her complaint at the pleading stage". Id. At *6. As the court explained:

> The fact that Langer – in light of her shaky articulation of her religious objection and the vehemence of her non-religious objections – may face an uphill battle to prove that she had a sincerely held religious belief that conflicted with the vaccinate-or-test requirements does not mean that I should grant the Board's motion to dismiss without further discovery and inquiry.

> Id. At *7; See also Vasquez v. City of New York, 22-cv-5068(HG),

2024 WL 1348702 at *6 (E.D.N.Y. Mar. 30, 2024) ("Although Plaintiff's allegations concerning his religious beliefs strike the Court has somewhat nebulous, whether he sincerely holds them is a factual question inappropriate for resolution on a motion to dismiss.").

In summary, the district court erred in holding that Gatto's failed to allege a bona fide religious belief.

16

Religious beliefs protected by Title VII need not be 'acceptable, logical, consistent or comprehensible to others…" EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002), citing Thomas v. Review Board of Indiana Employment Security Division 450 US 707, 714, 101 S. Ct. 1425, 67 6.Ed.2d 624 (1981).

Inconsistency does not mean a religious observer "forfeits[s] h[er] religious rights merely because (s)he is not "completely" scrupulous in h[er]observance […]" Ackerman v. Washington, (6F.4th 170, 180-81)(6th Cir. 2021), quoting Grayson v. Schuler, 666 F.3d 450, 454 (7th Cir. 2012)(Posner, J.) "[E]ven the most sincere practitioner may stray from time to time" Ackerman, quoting Moussazadeh v. Texas Department of Criminal Justice, 703 F.3d 781, 791 (5th Cir. 2012). Inconsistency is not synonymous with insincerity.

Here, Ms. Gatto submitted many reasons explaining her religious beliefs against both the vaccine and nasal testing. The Defendant's own policy contemplated granting exemptions to both the vaccine and testing (See Amended Comp. Exhibit "3"). Defendant initially did not understand Gatto's objection to testing and referred her to another

17

Case: 24-1992     Document: 15     Page: 21     Date Filed: 08/05/2024

department who chose not to return her voice messages. Reading Gatto's complaint and exhibits in a light most favorable to Gatto, clearly requires a finding that Gatto's claim for religious discrimination should survive a motion to dismiss.

The middle district of Florida recently denied summary judgment against the same argument Defendant attempts at the 12(b)(b) stage. In Scafidi v. B. Braun Med., Inc., No. 8:22-CV-2772-VMC-TGW, 2024 WL 184258 (M.D. Fla. Jan. 17, 2024), the defendant argued the plaintiff's objections were based on her own purely scientific, personal and medical beliefs" and that the plaintiff attempted to "[c]loak[] those beliefs in a religious robe." Id., at *8. The plaintiff stated her decision was a "matter of conscience," and admitted she had concerns regarding science and medical safety. Id. The defendant similarly cited Finkbeiner v. Geisinger Clinic, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022).[1] The  defendant employees who spoke with the plaintiff about

---

[1] The stated belief in Finkbeiner was "God given right to make [her] own choices. "See Finkbeiner, 623 F. Supp. 3d at 465. This was held to amount to a blanket privilege. Ms. Henry's belief is that her body is the temple of the Holy Spirit and should not be used for medical treatments that are unnecessary and require the injury of foreign materials into her body at paragraph 4. Compare Camp v. L.A. Areena Co. employee from participating in unnecessary and potentially harmful medical procedures amounts to a "blanket privilege" and could be used to avoid all unwanted employment obligations in the same way that a general right to make choices could.

her religious objections believed that her objections were scientific or political. <u>Scafidi</u>, supra at *8. The plaintiff, however, stated she is a practicing Christian, and that as a Christian part of her belief is that she must follow her conscience, which is guided by the Holy Spirit. Id., at *9. The plaintiff stated her beliefs about the Holy Spirit guiding her conscience are "laced throughout all the New Testament." Id. The <u>Scafidi</u> court found this sufficient to survive summary judgment. Citing <u>EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico</u> 279 F.3d 49, 56 (1st Cir. 2002) 279 F.3d 49, 56 (1st Cir. 2002), the court stated, "Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be  reserved "for the fact finder at trial, not for the court at summary judgment." <u>Scafidi</u>, <u>supra</u>, at 9.  Further, "the jury must decide whether [plaintiff] possessed a sincerely held religious belief that conflicted with [defendant's] vaccine requirement." <u>Id</u>. Citing <u>Dixon v. The Hallmark Co., Inc.</u>, 677 F.3d 849, 855 (11th Cir. 2010). Here, we are still at the pleading stage without the aid of discovery where plaintiff's complaint must be presumed to be

---

19

true. It is entirely premature to dismiss Gatto's complaint at the 12(b)(b) stage.

## CONCLUSION

For the reasons cited above, Gatto's claims survive a motion to dismiss. Defendant admitted that Gatto had a sincerely held religious belief against the vaccine but not nasal testing. Gatto tried to expound upon her objection to nasal testing but the Defendant either did not understand or ignored her request to further engage in the interactive process. The lower court failed to read Gatto's Amended Complaint in a light most favorable to her but rather chose to dissect her objections and made credibility determinations not proper at the 12Ib)(6) stage. Plaintiff has more than adequately pled a cause of action under Title VII for religious discrimination. Accordingly, the district court's decision should be rendered.

Respectfully submitted,

The Welsh Law Group, LLC

_____

James L. Welsh, III
PA I.D. #58790
Counsel for Plaintiff

Dated: 8/5/24

20

# CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION, TYPE FACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type volume limitation of Fed. R. App. P. 21(d) because this brief has been prepared using Microsoft Word with Century Schoolbook 14-point font (12-point font for footnotes) and contains no more than 6300 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Date: _8/5/24_

_____
James L. Welsh, III, Esquire
THE WELSH LAW FIRM

Attorney for Plaintiff/Appellant

Date Filed: 08/05/2024    Page: 25    Document: 15    Case: 24-1992