# No. 24-1992

## In the United States Court of Appeals
### FOR THE THIRD CIRCUIT

JILL GATTO,

*Appellant,*

v.

JOHNSON & JOHNSON SERVICES, INC.,

*Appellee.*

On Appeal from the Order Entered by the United States District Court
for the Western District of Pennsylvania, No. 2:23-cv-01607
(Honorable William S. Stickman IV)

## BRIEF OF APPELLEE
## JOHNSON & JOHNSON SERVICES, INC.

MATTHEW D. KLAYMAN
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

CHRISTOPHER K. RAMSEY
MORGAN, LEWIS & BOCKIUS LLP
301 Grant Street
One Oxford Centre, Suite 3200
Pittsburgh, PA 15219
(412) 560-3300

EMILY CUNEO DESMEDT
JASON J. RANJO
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600

*Counsel for Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Appellee Johnson & Johnson Services, Inc. makes the following disclosure:

1)    For nongovernmental corporate parties, please list all parent corporations:

*Johnson & Johnson*

2)    For nongovernmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

*None.*

3)    If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*None.*

4)    In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured creditors; and, (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or

i

trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable.*

Dated: September 18, 2024          *s/ Emily Cuneo DeSmedt*
                                   EMILY CUNEO DESMEDT

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement.................................................................i

Table of Authorities.................................................................... v

Introduction.................................................................. 1

Statement of Jurisdiction....................................................... 3

Statement of the Issues......................................................... 4

Statement of Related Cases and Proceedings ......................... 4

Statement of the Case ............................................................ 5

    I.    Johnson & Johnson granted Plaintiff a religious
exemption from its COVID-19 vaccination requirement. ..... 5

    II.    Plaintiff failed to articulate a sincerely held religious
belief that prevented her from testing for COVID-19. .......... 7

    III.    The district court dismissed Plaintiff's religious
discrimination claims. ............................................................ 10

Summary of Argument.................................................... 13

Standard of Review ............................................................ 17

Argument............................................................................ 17

    I.    The district court correctly dismissed Plaintiff's
religious discrimination claims for failure to plead a
sincerely held religious belief in conflict with required
COVID-19 testing................................................................ 19

        A.    At the pleading stage, this Court decides as a
matter of law whether Plaintiff has plausibly
alleged a conflicting religious belief. .......................... 19

        B.    Plaintiff failed to plead a sincerely held religious
belief that conflicts with required COVID-19
testing..................................................................... 23

# TABLE OF CONTENTS
### (continued)

**Page**

1.   Plaintiff's alleged religious objections to required vaccinations do not conflict with required testing.................................................. 24

2.   Plaintiff's conclusory assertion of religious opposition to COVID-19 testing is not well-plead. ................................................................. 28

3.   Plaintiff's alleged religious objection to differential treatment is an impermissible request for a "blanket privilege." ........................ 31

II.   In the alternative, this Court should affirm the dismissal of Plaintiff's religious discrimination claims because the requested accommodation would constitute an undue hardship. ............................................ 35

Conclusion ........................................................................... 38

Certificate of Bar Membership, Compliance with Type-Volume Limitation and Typeface Requirements, and Virus Check .......... 40

Certificate of Service ........................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Mass Gen. Brigham Inc.*,
No. 21-11686-FDS, 2023 WL 6318821 (D. Mass. Sept. 28,
2023) .............................................................................................. 37

*Africa v. Commw. of Pa.*,
662 F.2d 1025 (3d Cir. 1981) ..................................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 17

*Beickert v. N.Y.C. Dep't of Educ.*,
No. 22-cv-5265-DLI-VMS, 2023 WL 6214236 (E.D.N.Y.
Sept. 25, 2023) ............................................................................... 37

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................ 17

*Berna v. Bayhealth Med. Ctr., Inc.*,
No. CV 23-945, 2024 WL 456420 (D. Del. Feb. 5, 2024) ................... 33

*Billings v. Murphy*,
No. 22-2010, 2024 WL 444727 (2d Cir. Feb. 6, 2024) ....................... 22

*Blackwell v. Lehigh Valley Health Network*,
No. 5:22-cv-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan.
23, 2023) ................................................................................... 26, 32

*Bordeaux v. Lions Gate Ent., Inc.*,
No. 2:22-cv-04244-SVW-PLA, 2023 WL 8108655 (C.D. Cal.
Nov. 21, 2023) ............................................................................... 37

*Brody v. Hankin*,
145 F. App'x 768 (3d Cir. 2005) ..................................................... 35

*Brown v. Children's Hosp. of Phila.*,
794 F. App'x 226 (3d Cir. 2020) ............................................. 19, 22, 28

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Cloutier v. Costco Wholesale Corp.*,
390 F.3d 126 (1st Cir. 2004) ............................................................. 38

*Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc.*,
450 F.3d 130 ....................................................................................... 30

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*,
877 F.3d 487 (3d Cir. 2017) ....................................................... *passim*

*Finkebeiner v. Geisinger Clinic*,
623 F. Supp. 3d 458 (M.D. Pa. 2022) .......................................... 26, 33

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) .............................................................. 27

*EEOC v. GEO Grp., Inc.*,
616 F.3d 265 (3d Cir. 2010) .............................................................. 18

*Giurca v. Bon Secours Charity Health Sys.*,
No. 23-200, 2024 WL 763388 (2d Cir. Feb. 26, 2024) ........................ 22

*Gov't Empls. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*,
98 F.4th 463 (3d Cir. 2024) .............................................................. 27

*Groff v. DeJoy*,
600 U.S. 447 (2023) ........................................................................... 36

*Hand v. Bayhealth Med. Ctr., Inc.*,
No. 22-cv-1548-RGA, 2024 WL 359245 (D. Del. Jan. 31, 2024) ........................................................................................... 33

*Harvey v. Bayhealth Medical Ctr., Inc.*,
No. 23-945, 2024 WL 456498 (D. Del. Feb. 5, 2024) ........................ 33

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Langer v. Hartland Bd. of Ed.*,
No. 3:22-cv-1459 (JAM), 2023 WL 6140792 (D. Conn.
Sept. 20, 2023) ............................................................................... 22

*Lowe v. Mills*,
68 F.4th 706 (1st Cir. 2023) ........................................................ 35

*Lucky v. Landmark Med. of Michigan, P.C.*,
No. 23-CV-11004, 2023 WL 7095085 (E.D. Mich. Oct. 26,
2023) .............................................................................................. 33

*Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*,
34 F.4th 190 (3d Cir. 2022) .......................................................... 17

*McKinley v. Princeton Univ.*,
No. 22-cv-5069 (MAS), 2023 WL 8374486 (D.N.J. Dec. 1,
2023) .............................................................................................. 26

*Montemuro v. Jim Thorpe Area Sch. Dist.*,
99 F.4th 639 (3d Cir. 2024) .......................................................... 35

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997) .......................................................... 30

*Newman v. Beard*,
617 F.3d 775 (3d Cir. 2010) .......................................................... 17

*Scafidi v. B. Braun Med., Inc.*,
No. 8:22-cv-2772-VMC-TGW (M.D. Fla. Jan. 17, 2024) ............. 23

*TD Bank N.A. v. Hill*,
928 F.3d 259 (3d Cir. 2019) .......................................................... 35

*Ulrich v. Lancaster Gen. Health*,
No. 22-4945, 2023 WL 2939585 (E.D. Pa. Apr. 13, 2023) ........... 26

vii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Vasquez v. City of New York*,
No. 22-cv-5068(HG), 2024 WL 1348702 (E.D.N.Y. Mar. 30, 2024) ........................................................................................... 22

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
522 F.3d 315 (3d Cir. 2008) ............................................................... 18

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ............................................................................ 32

*Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ............................................................... 27

## Federal Statutes

28 U.S.C.
§ 1291 .................................................................................................. 3
§ 1331 .................................................................................................. 3
§ 1367 .................................................................................................. 3

Civil Rights Act of 1964 Title VII,
42 U.S.C. § 2000e *et seq.* .......................................................... *passim*
42 U.S.C. § 2000e-2(a)(1) ................................................................. 17
42 U.S.C. § 2000e(j) ........................................................................... 18

## State Statutes

Pennsylvania Human Relations Act,
43 Pa. Stat. § 951 *et seq.* .......................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ............................................................. 17, 23, 26

## INTRODUCTION

During the height of the global COVID-19 pandemic, Defendant-Appellee Johnson & Johnson Services, Inc. ("Johnson & Johnson") implemented a policy requiring its U.S.-based employees to become vaccinated against COVID-19. Consistent with the law, Johnson & Johnson permitted employees to seek exemptions from the policy if their sincerely held religious beliefs prohibited vaccination.

Plaintiff-Appellant Jill Gatto is a former Johnson & Johnson Executive Cardiovascular Sales Representative. She requested an exemption from the vaccination requirement, representing that her purported religious beliefs and practices prohibited her from receiving vaccinations of any kind. Johnson & Johnson granted her request. In lieu of vaccination, Johnson & Johnson required Plaintiff to take other precautions to prevent the spread of COVID-19, including regularly submitting to COVID-19 nasal swab testing.

Plaintiff refused this accommodation. She claimed that COVID-19 nasal swab testing somehow *also* violated her religious beliefs and requested an additional exemption from the testing requirement. This time, however, Plaintiff failed to articulate sincerely held religious beliefs

1

that conflicted with the testing requirement. Moreover, Plaintiff's refusal to get vaccinated *or* test for COVID-19 interfered with Johnson & Johnson's ability to maintain a safe and healthy work environment. If Plaintiff continued in her job—which required her to regularly interact in person with healthcare providers and patients—without being vaccinated or testing for COVID-19, she would have put Johnson & Johnson's other employees and customers at risk, and damaged Johnson & Johnson's reputation as a global leader in the fight against COVID-19. Accordingly, Johnson & Johnson did not exempt Plaintiff from the testing requirement. After Plaintiff failed to comply, Johnson & Johnson terminated her employment.

Plaintiff sued Johnson & Johnson, alleging that the company discriminated against her by denying her request for exemption from the testing requirement and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). The district court dismissed the action for failure to state a claim, and this Court should affirm for two independent reasons.[1] First, the district court correctly held that Plaintiff failed to

---

[1] Plaintiff has not appealed the dismissal of her retaliation claim.

2

plausibly allege that she sincerely holds a religious belief that conflicted with the COVID-19 testing requirement. Second, this Court can affirm because permitting Plaintiff to continue working as an Executive Cardiovascular Sales Representative at the height of the global COVID-19 pandemic without being vaccinated or regularly testing for COVID-19 would have imposed undue hardship on Johnson & Johnson.

For these reasons, the judgment of the district court should be affirmed.

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and pursuant to 28 U.S.C. § 1367 over Plaintiff's claim under the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 *et seq. See* App. 5 (Am. Compl. ¶ 1). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The district court entered the final judgment that Plaintiff appeals on April 29, 2024. *See* App. 32. Plaintiff timely filed her Notice of Appeal on May 28, 2024. *See* App. 1–2.

## STATEMENT OF THE ISSUES

1.    Did the district court correctly dismiss Plaintiff's religious discrimination claims under Title VII and the PHRA because Plaintiff failed to articulate a sincerely held religious belief that conflicted with nasal swab testing for the COVID-19 virus?  *See* App. 28–30; Dist. Ct. Doc. 16 at 7–14.

2.    Should this Court affirm the district court's dismissal of Plaintiff's religious discrimination claims on the independent, alternative ground that Johnson & Johnson would have suffered undue hardship if Plaintiff continued her employment unvaccinated and untested at the height of the COVID-19 pandemic?  *See* Dist. Ct. Doc. 16 at 14–16.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.  Johnson & Johnson is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

4

## STATEMENT OF THE CASE

### I.  Johnson & Johnson granted Plaintiff a religious exemption from its COVID-19 vaccination requirement.

Plaintiff is a former Johnson & Johnson Executive Cardiovascular Sales Representative.  App. 6 (Am. Compl. ¶ 3).  She alleges that she is a "life-long devout member of the Christian faith" who believes "that her body is a holy temple of the Holy Spirit and that being vaccinated would entail going against her convictions and the commands of God."  App. 7 (Am. Compl. ¶¶ 5–6).

In August 2021, Plaintiff requested that Johnson & Johnson accommodate her purported religious beliefs by exempting her from its policy requiring U.S.-based employees to become vaccinated against COVID-19.  App. 7 (Am. Compl. ¶ 6); *see* App. 15–16 (Am. Compl., Ex. 1).

In her request, Plaintiff wrote that it was her "personal responsibility as a Christian not to only preserve [her] physical being to the best of [her] ability, but to also become as informed as possible about any and all materials that are placed into [her] temple."  App. 15 (Am. Compl., Ex. 1 at 1).  Plaintiff explained that as a result of her "learnings about negative effects of immunizations," she and her husband followed their "religious duty to keep holy [their] bodies as well as the bodies of

5

[their] children … through becoming edified about vaccine ingredients, the development process and testing." App. 16 (Am. Compl., Ex. 1 at 2).

Plaintiff wrote that "ingesting anything through a process that bypasses the normal detoxification pathway" was "contrary to how God intended the human body to function" because "[t]hroughout the Bible, God's word authorizes the natural process of eating and drinking … which filters out pathogens, to use the beneficial nutrients for natural function, and to excrete the toxins and harmful substances as waste." App. 16 (Am. Compl., Ex. 1, at 2). She therefore objected to "any and all mandated vaccinations / immunizations" because she believed that "to inject or to administer in another unnatural route (e.g. intramuscular injection, intravenous injection, nasal administration) is to bypass God's intended processes for our bodies." App. 15–16 (Am. Compl., Ex. 1 at 2). Plaintiff also objected to vaccination requirements on the grounds that "all immunizations" purportedly "use aborted fetal tissue or aborted cell lines at some stage of the process, including development, testing, and manufacturing." App. 16 (Am. Compl., Ex. 1 at 2).

As evidence of the sincerity of her opposition to vaccination, Plaintiff pointed to "yearly TB blood draws" that she received "as a result

of a long-standing medical direction to no longer receive vaccinations"
after she personally "had numerous reactions to immunizations including
the influenza and the DTaP vaccines … [and] a systematic reaction to the
TB Mantoux serum." App. 15 (Am. Compl., Ex. 1 at 1). She also wrote
that she and her husband "exempted [their] children from school
vaccinations for many years." App. 15 (Am. Compl., Ex. 1 at 1).

After twelve days and two meetings with Plaintiff to discuss her
purported beliefs, Johnson & Johnson granted Plaintiff's request and
agreed not to require her to become vaccinated against COVID-19. App.
7–8 (Am. Compl. ¶¶ 6, 8). Johnson & Johnson understood, however, that
exempting Plaintiff from the vaccination requirement increased the risk
that she would spread COVID-19 to other employees and the healthcare
providers and patients with whom she interacted. Accordingly, Johnson
& Johnson required Plaintiff to wear a mask during face-to-face
interactions and submit to regular nasal swab testing for the COVID-19
virus. App. 7–8 (Am. Compl. ¶ 8).

## II.    Plaintiff failed to articulate a sincerely held religious belief that prevented her from testing for COVID-19.

In September 2021, a few weeks after Johnson & Johnson granted
Plaintiff's request for an exemption from its COVID-19 vaccination

requirement, Plaintiff asked Johnson & Johnson to also exempt her from the COVID-19 nasal swab testing requirement.  App. 7–8 (Am. Compl. ¶ 8).

In support of that additional request, Plaintiff wrote that she was "religiously opposed to any testing (such as BinaxNOW) which will require insertion of foreign matter into [her] body as well as collection of [her] bodily fluids and reporting results."  App. 18 (Am. Compl., Ex. 2); *see also* App. 7–8 (Am. Compl. ¶ 8) (claiming religious objection to "nasal testing" based on a "sincerely held religious belief not to inject foreign substances into her body"); App. 10 (Am. Compl. ¶ 18) (claiming religious objection to "nasal testing" based on "a sincerely held religious belief that [Plaintiff's] body is a temple of the Holy Spirit, and that to inject medical products that were not created by God himself is unholy and disrespectful to his temple").  For "expansion on [her] religious beliefs" (App. 18 (Am. Compl., Ex. 2)), Plaintiff referred back to her "first letter for a vaccination exemption," though that first letter focused on her purported religious objection to "vaccinations / immunizations" and did not address any purported religious beliefs conflicting with COVID-19 nasal swab testing (App. 15 (Am. Compl., Ex. 1 at 1)).  Plaintiff also wrote that she opposed

"any treatment which differs from that of vaccinated employees, as differing treatment amounts to persecution for beliefs." App. 18 (Am. Compl., Ex. 2).

The balance of Plaintiff's accommodation request summarized her additional concerns about the safety and efficacy of the COVID-19 vaccines and Johnson & Johnson's decision to follow government guidance regarding COVID-19 safety protocols. *See* App. 18 (Am. Compl., Ex. 2) ("[N]ew forced mandates reflect authoritative tyranny which is predicted in the Bible as the start of 'End Times.' … [T]he present mandates are occurring with a backdrop of media and governmental cries … as predicted in the Bible. … These pieces, together with tyrannical pressure of compliance form the foundation for the Mark of the Beast in the Book of Revelation (13:16). … I cannot willingly participate in such a Biblically evil agenda. … I will serve God, not money.").

Johnson & Johnson denied Plaintiff's request for exemption from the COVID-19 testing requirement. App. 7–8 (Am. Compl. ¶ 8). In October 2021, after Plaintiff refused to comply with the COVID-19 testing requirement, Johnson & Johnson placed her on leave and then terminated her employment. App. 7–8 (Am. Compl. ¶ 8).

9

### III. The district court dismissed Plaintiff's religious discrimination claims.

Plaintiff sued Johnson & Johnson.  In her Amended Complaint, Plaintiff claimed that by requiring her to submit to nasal swab testing for the COVID-19 virus, Johnson & Johnson engaged in unlawful religious discrimination in violation of both Title VII and the PHRA.[2]  *See* App. 11–14 (Am. Compl. ¶¶ 26–35).

Johnson & Johnson moved to dismiss Plaintiff's religious discrimination claims on two grounds.

First, Johnson & Johnson argued that Plaintiff failed to plead that she sincerely holds a religious belief that conflicted with the testing requirement.  Though Plaintiff described her objection to the testing requirement in her Amended Complaint, she did not allege that she holds any beliefs that actually qualify as "religious" and that prevent her from COVID-19 nasal swab testing.

Second, Johnson & Johnson argued that it was clear from the face of the Amended Complaint that granting Plaintiff's requested

---

[2] Plaintiff also asserted claims for unlawful retaliation under both Title VII and the PHRA.  *See* App. 11–14 (Am. Compl. ¶¶ 26–35).  The district court dismissed those claims, App. 30 (Op. 10 n.1), and Plaintiff does not challenge that dismissal on appeal.

exemptions from both the COVID-19 vaccination requirement *and* the COVID-19 testing requirement would impose undue hardship on Johnson & Johnson because it would jeopardize the safety of Johnson & Johnson's workplace and harm Johnson & Johnson's reputation as a leader in the fight against COVID-19.

The district court dismissed the Amended Complaint for failure to state a claim, holding that Plaintiff failed to plausibly allege that she sincerely holds a religious belief that conflicts with the COVID-19 testing requirement.  Consistent with this Court's precedent, the district court was careful not to "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."  App. 27 (Op. 7).  Instead, the district court focused on "whether the facts alleged by the plaintiff support the reasonable inference that h[er] beliefs are sincerely held and 'in [the believer's] own scheme of things, religious.'"  App. 27 (Op. 7).

Applying that standard, the district court held that the Amended Complaint and its attachments "do not plausibly allege that [Plaintiff]'s religious beliefs related to nasal swab testing meet the requisite standard."  App. 28 (Op. 8).  In Plaintiff's request for exemption from the

testing requirement, she referred back to her explanation of her religious beliefs "in the context of vaccination and immunization," but as the district court explained, that explanation did "not connect these religious objections to nasal swab testing." App. 28 (Op. 8). The Amended Complaint contained no additional information about the purported religious nature of Plaintiff's objection to nasal swab testing or how her purported beliefs conflict with the testing requirement. The district court concluded that the objection to COVID-19 nasal swab testing that Plaintiff described was more "an isolated moral teaching" than a religious belief. App. 29 (Op. 9).

The district court also held that Plaintiff's pleading "unequivocally undermine[d] the sincerity and religiosity" of her purported objection to the COVID-19 testing requirement. App. 29 (Op. 9). In Plaintiff's request for exemption from the vaccination requirement, which she attached to the Amended Complaint as Exhibit 1, Plaintiff admitted that she "receives yearly tuberculosis blood draws instead of receiving the vaccine." App. 29 (Op. 9); *see also* App. 15 (Am. Compl., Ex. 1 at 1). Plaintiff's "admission that she receives yearly tuberculosis blood draws directly contradict[s]" her purported opposition to "insertion of foreign

matter into [her] body" and "collection of [her] bodily fluids." App. 29 (Op. 9); *see also* App. 18 (Am. Compl., Ex. 2). Because Plaintiff's pleading demonstrates that her beliefs are "not consistently applied throughout her life," the district court held she did not plausibly allege that her beliefs are religious or sincere. App. 29 (Op. 9).

Because the district court dismissed Plaintiff's discrimination claims due to her failure to "allege that her beliefs were sincerely held and religious in nature," App. 30 (Op. 10), it did not decide whether exempting Plaintiff from the testing requirement under the circumstances would impose an "undue hardship" on Johnson & Johnson.

## SUMMARY OF ARGUMENT

The district court properly dismissed Plaintiff's religious discrimination claims. Its judgment should be affirmed on two independently sufficient grounds.

First, Plaintiff failed to plead a sincerely held religious belief that conflicted with the COVID-19 testing requirement. At the pleading stage, it is proper for the Court to consider whether Plaintiff has alleged that she sincerely holds a religious belief that conflicts with required COVID-19 testing. Plaintiff's argument that the Court must simply

accept her characterization of her beliefs as "religious" is contrary to this Court's settled precedent, especially *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981), and *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487 (3d Cir. 2017).

Under the correct legal standard, Plaintiff failed to plead a sincerely held belief that is religious and that conflicts with the COVID-19 testing requirement.

First, Plaintiff claimed that her religious beliefs concerning COVID-19 *vaccination* conflicted with required COVID-19 *testing*, but she failed to identify any connection between her beliefs about vaccination and testing. Plaintiff alleged that she could not get vaccinated because her purported religious beliefs prohibited her from ingesting foreign substances and vaccines developed through "gene manipulation." Those concerns did not plausibly prohibit COVID-19 testing because Plaintiff's Amended Complaint contains no well-pleaded allegations that nasal swab testing results in the ingestion of any foreign substances or implicates any other purportedly religious concerns Plaintiff articulated.

14

Second, Plaintiff made the conclusory assertion that she is "religiously opposed to any testing (such as BinaxNOW) which will require insertion of foreign matter into [her] body as well as collection of [her] bodily fluids and reporting results." App. 18 (Am. Compl., Ex. 2). But that conclusory assertion not only fails to satisfy the legal test for religiosity, but also directly conflicts with Plaintiff's admission that she receives yearly blood draws to test for tuberculosis, which necessarily requires the "insertion of foreign matter into [her] body" and the "collection of [her] bodily fluids and reporting results." App. 18 (Am. Compl., Ex. 2). Plaintiff's admission renders implausible her conclusory allegation that her religious beliefs prohibit her from using a nasal swab to test for COVID-19, undermining the purported religiosity and sincerity of that alleged belief.

Finally, Plaintiff claimed a religious opposition to any "different" or "tyrannical" treatment of the unvaccinated. But that purported belief runs contrary to the entire framework for religious discrimination law, which is predicated on differential treatment (*i.e.*, accommodations) of religious beliefs. It is therefore, in effect, an impermissible request for a

"blanket privilege" to ignore any requirement that Plaintiff deems undesirable, and it cannot support a religious discrimination claim.

In the alternative, this Court can affirm the dismissal of Plaintiff's religious discrimination claims because it is clear on the face of the Amended Complaint that Johnson & Johnson would have suffered undue hardship if Plaintiff were to continue in her role both unvaccinated and untested for the COVID-19 virus. Plaintiff, as part of her job, interfaced directly and in person with healthcare providers and patients. Having her continue unvaccinated and untested at the height of the COVID-19 pandemic would have presented substantial risks to health and safety and, by extension, undue hardship to Johnson & Johnson. Moreover, because Johnson & Johnson is a leader in the healthcare industry in fighting COVID-19, allowing Plaintiff to continue working when she presented such obvious health and safety risks would have reflected poorly on Johnson & Johnson's reputation, furthering the undue hardship that would have resulted if Johnson & Johnson had granted Plaintiff's preferred accommodation.

For these reasons, the district court's judgment should be affirmed.

16

## STANDARD OF REVIEW

The grant of a motion to dismiss for failure to state a claim is subject to plenary review. *Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*, 34 F.4th 190, 195 (3d Cir. 2022). Under Rule 12(b)(6), a motion to dismiss may be granted if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, those allegations do not raise a claim of entitlement to relief. *Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010). The plaintiff must plead facts sufficient to state a claim to relief that is "plausible on its face" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

## ARGUMENT

Title VII makes it unlawful for an employer "to discharge … or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). "[A]n employer must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an 'undue hardship' for

17

the employer." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318-19 (3d Cir. 2008) (citing 42 U.S.C. § 2000e(j)).  The PHRA is analyzed under the same legal standard.  *Id.*

To state a *prima facie* claim for religious discrimination under Title VII or the PHRA, Plaintiff must plausibly allege that she (1) had a sincere religious belief that conflicts with a job requirement, (2) informed Johnson & Johnson of that conflict, and (3) was disciplined for failing to comply with the conflicting requirement.  *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010).  If Plaintiff states a *prima facie* claim of religious discrimination, the burden shifts to Johnson & Johnson to show that accommodating Plaintiff's religious belief "would work an undue hardship upon [Johnson & Johnson] and its business."  *Id.*

This Court should affirm the dismissal of Plaintiff's religious discrimination claims on either of two independently sufficient grounds: (1) Plaintiff failed to identify a sincerely held religious belief that conflicted with the COVID-19 testing requirement, and (2) exempting Plaintiff from both the vaccination requirement *and* the testing requirement would cause Johnson & Johnson undue hardship.

I. **The district court correctly dismissed Plaintiff's religious discrimination claims for failure to plead a sincerely held religious belief in conflict with required COVID-19 testing.**

A. **At the pleading stage, this Court decides as a matter of law whether Plaintiff has plausibly alleged a conflicting religious belief.**

Title VII and the PHRA do not require employers to accommodate all objections to workplace policies. Employers are required to accommodate beliefs only if they are "(1) sincerely held, *and* (2) religious in nature, in the claimant's scheme of things." *Africa v. Commw. of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981) (emphasis added). "[I]t is not sufficient [for a plaintiff] merely to hold a sincere opposition to [an employment requirement]; rather, the [plaintiff] must show that the opposition … is a religious belief." *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (internal quotation marks omitted).

Under this Court's seminal decision in *Africa v. Commonwealth of Pennsylvania,* to properly allege that beliefs are "religious," an employee must plausibly allege facts sufficient to show that her beliefs (1) address "fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature" and not mere "isolated teaching[s]," and/or (3) are "accompanied by certain formal and external signs." 662 F.2d at 1032.

19

It is well settled that at the pleading stage, it is this Court's role to determine as a matter of law whether alleged beliefs are "religious." In *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, for example, the plaintiff sought a religious exemption from his employer's requirement that he be vaccinated against the flu. 877 F.3d at 488. The employer refused to grant the exemption and terminated the plaintiff's employment when he failed to comply with the vaccine requirement. *Id.* at 489. The plaintiff sued for religious discrimination, claiming that the vaccine requirement conflicted with his sincerely held religious beliefs. *Id.* at 490. The district court dismissed the plaintiff's lawsuit on the pleadings for failure to state a claim. *Id.* at 489.

This Court affirmed. Noting that it was "the task of a court" to decide whether allegedly sincere beliefs are "in [the believer's] own scheme of things, religious," *id.* at 490–91 (alteration in original), the Court examined closely the plaintiff's beliefs and ultimately held that they did not satisfy any of the *Africa* factors and thus were "not religious and not protected by Title VII." *Id.* at 492. For example, the plaintiff claimed to hold religious beliefs that "one should not harm their [sic] own body," that "the flu vaccine may do more harm than good," and that

20

"yield[ing] to coercion and consent[ing] to the hospital mandatory policy … would violate his conscience as to what is right and what is wrong." *Id.* But the Court concluded that those beliefs were not "religious" as a matter of law: the belief that the vaccine "may do more harm than good" was "a medical belief, not a religious one"; beliefs that the plaintiff should not "harm [his] own body" or "yield[] to coercion" or "violate his conscience" represented "isolated moral teaching[s]," not a comprehensive system of religious beliefs; and none of the plaintiff's beliefs were "manifested in formal and external signs." *Id.* Taken together, this Court held that the plaintiff failed to plead beliefs that were *religious* and thus failed to state a claim for *religious* discrimination.

Plaintiff argues on appeal, as she did in the district court, that because she says her objections to COVID-19 testing are religious, the Court must take her word for it. According to Plaintiff, the district court erred because it "took it upon itself to dissect [her] letters" instead of simply "accepting that [Plaintiff] was asserting a religious objection." Appellant's Opening Br. ("AOB") 11, 15; *see also* AOB 12 ("the district court erred in construing [sic] the complaint in a light most favorable to

21

[Plaintiff]"); AOB 15 (complaining that the district court supposedly made "factual findings as to [Plaintiff's] faith"). But the law is clear that at the pleading stage, courts must decide whether the plaintiff has alleged a religious belief. *See, e.g.*, *Fallon*, 877 F.3d at 490–91 ("[T]he task ***of a court*** is to decide whether the beliefs professed … are, in [the believer's] own scheme of things, religious.") (emphasis added and internal quotation marks omitted); *Brown*, 794 F. App'x at 228 (affirming dismissal of religious discrimination claim for lack of "allegations tend[ing] to show that [the plaintiff's] belief was religious").

Plaintiff does not cite *Fallon* or *Brown*—or any other decision from this Court—in connection with her argument. Instead, she cites two unpublished out-of-circuit cases for the proposition that Plaintiff's pleading burden is "minimal." *See* AOB 13 (citing *Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 763388, at *1 (2d Cir. Feb. 26, 2024), and *Billings v. Murphy*, No. 22-2010, 2024 WL 444727, at *3 (2d Cir. Feb. 6, 2024)).[3] But nothing in *Africa*, *Fallon*, or any other decision

---

[3] Plaintiff also cites a series of unpublished out-of-circuit district court cases purportedly to illustrate the "proper 12(b)(6) analysis." AOB 15–16; *see also* AOB 15–19 (citing *Langer v. Hartland Bd. of Ed.*, No. 3:22-cv-1459 (JAM), 2023 WL 6140792 (D. Conn. Sept. 20, 2023)), and *Vasquez v. City of New York*, No. 22-cv-5068(HG), 2024 WL 1348702, at *6

from this Court concerning the burden to plead a *religious* belief to state a claim for *religious* discrimination describes that burden as "minimal" or otherwise supports Plaintiff's contention that her alleged beliefs must be treated as "religious" on her say-so and without any analysis.

### B.    Plaintiff failed to plead a sincerely held religious belief that conflicts with required COVID-19 testing.

Based on its careful analysis of Plaintiff's Amended Complaint and Plaintiff's requests for exemption from the vaccination requirement (Exhibit 1 to the Amended Complaint) and the testing requirement (Exhibit 2 to the Amended Complaint), the district court correctly held that Plaintiff failed to plead a sincerely held *religious* belief in conflict with required COVID-19 testing.  On appeal, Plaintiff largely repeats the same three arguments that appear in her pleading.  None suffices to state a claim for religious discrimination.

---

(E.D.N.Y. Mar. 30, 2024); *see also* AOB 18–20 (discussing Rule 56 decision in *Scafidi v. B. Braun Med., Inc.*, No. 8:22-cv-2772-VMC-TGW (M.D. Fla. Jan. 17, 2024), as a contrast to Rule 12(b)(6)).  None applied the test for religiosity announced by this Court in *Africa* or considered this Court's binding precedential decision in *Fallon.*

### 1. Plaintiff's alleged religious objections to required vaccinations do not conflict with required testing.

In her request for exemption from the COVID-19 testing requirement, Plaintiff expressly refers back to her "letter for a vaccination exemption … for expansion on [her] religious beliefs." App. 18 (Am. Compl., Ex. 2); *see also* App. 15–17 (Am. Compl., Ex. 1) (request for exemption from vaccination requirement); App. 7 (Am. Compl. ¶ 7) (complaining that Plaintiff's religious beliefs "were accepted as to the vaccine but not to invasive nasal testing").  But the "letter for a vaccination exemption" is (unsurprisingly) focused specifically on "mandated vaccinations / immunizations" (App. 15 (Am. Compl., Ex. 1 at 1)), and Plaintiff has never explained how her purportedly religious beliefs about COVID-19 *vaccination* conflicted with any required COVID-19 *testing*.  As the district court rightly noted, Plaintiff's failure to "connect" her description of religious principles to any "religious objections to nasal swab testing" or explain "how her faith conflicts with nasal swab testing" means she has failed to plead a conflicting religious belief.  App. 28–29 (Op. 8–9).

On their face, Plaintiff's objections to COVID-19 *vaccination* do not plausibly demonstrate that she holds a religious belief that conflicts with COVID-19 *testing*. For example, Plaintiff described her purported belief that "knowingly ingesting anything through a process that bypasses the normal detoxification pathway (i.e., eating or drinking) is contrary to how God intended the human body to function." App. 16 (Am. Compl., Ex. 1 at 2). She also wrote that "[t]o inject or to administer in another unnatural route (e.g. intramuscular injection, intravenous injection, nasal administration), is to bypass God's intended processes for our bodies." App. 16 (Am. Compl., Ex. 1 at 2). But without more, those beliefs have no plausible conflict with COVID-19 testing. Indeed, the very same paragraph connected those objections specifically to "[i]mmunizations … known to contain contaminants" that "are not permitted to undergo the divine process of detoxification" when administered through "an unnatural route." App. 16 (Am. Compl., Ex. 1 at 2). The Amended Complaint alleges no comparable concern with respect to nasal swab testing. Similarly, Plaintiff cited the purported use of "aborted fetal tissue or aborted cell lines" in developing vaccines, "gene manipulation in vaccines," and that "immunizations meant for humans also often

25

involve the use of materials from animals and insects," App. 16 (Am. Compl., Ex. 1 at 2). Each of those objections reflects a purported belief that conflicts with *vaccination*; they have no plausible bearing on a COVID-19 *testing* requirement.

Courts around the country have consistently dismissed Title VII claims under Rule 12(b)(6) where plaintiffs have failed to plead a sufficiently specific connection between religious beliefs and objections to COVID-19 safety protocols. *See, e.g.*, *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 WL 2939585, at *5–6 (E.D. Pa. Apr. 13, 2023) (dismissing failure to accommodate claim under Rule 12(b)(6) because plaintiff who alleged that her body is a temple failed to plead that her objection to COVID-19 nasal testing was based on a sincerely held religious belief); *McKinley v. Princeton Univ.*, No. 22-cv-5069 (MAS), 2023 WL 8374486, at *3–5 (D.N.J. Dec. 1, 2023) (same); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360-JMG, 2023 WL 362392, at *8–9 (E.D. Pa. Jan. 23, 2023) (dismissing Title VII claims of plaintiff who refused COVID-19 nasal swab testing because she did not demonstrate that her alleged belief forbidding the insertion of an unwanted foreign object into her body was religious); *Finkebeiner v.*

*Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (same, where plaintiff's objection to COVID-19 nasal swab testing was based on her God-given right to make her own choices).

On appeal, Plaintiff attempts to bridge this obvious gap in her pleading through argument, claiming that Plaintiff's objection is to the presence of "foreign material on the end of the nasal swab" that she would ingest when undergoing COVID-19 nasal swab testing. AOB 11. There is nothing in the Amended Complaint—much less the exemption requests actually communicated to Johnson & Johnson—that comes close to alleging the presence of "foreign material" on nasal swabs used for testing. This *post hoc* recharacterization of the pleading is not enough to prevent dismissal. *See Gov't Empls. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024) ("[A] 'complaint may not be amended by the briefs in opposition to a motion to dismiss.'"); *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) ("we do not consider after-the-fact allegations in determining the sufficiency of [a] complaint"); *Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint.").

27

### 2.    Plaintiff's conclusory assertion of religious opposition to COVID-19 testing is not well-plead.

Plaintiff also relies on the conclusory assertion that she is "religiously opposed to any testing (such as BinaxNOW) which will require insertion of foreign matter into [her] body as well as collection of [her] bodily fluids and reporting results." App. 18 (Am. Compl., Ex. 2). This statement does not adequately plead a sincerely held religious belief for two reasons.

First, as explained above, Plaintiff's mere assertion that a belief is "religious" does not make it so under this Court's precedents. *See, e.g.*, *Fallon*, 877 F.3d at 491. Were Plaintiff's view correct, *Africa*, *Fallon*, and *Brown* would have been decided differently. Rather, it remains the role of the court to assess whether a plaintiff's alleged beliefs are sufficiently "religious" to support a religious discrimination claim.

Second, Plaintiff's own allegations directly contradicted her purported "religious" objection to the "insertion of foreign matters into [her] body" and the collection of her "bodily fluids" for "reporting results" of medical tests. Plaintiff admits that she receives "yearly TB blood draws as a result of a long-standing medical direction to no longer receive vaccinations." App. 15 (Am. Compl., Ex. 1 at 1). As the district court

correctly noted, "[s]uch blood draws presumably require the insertion of a needle into [Plaintiff's] body to collect a sample of her bodily fluids for testing and reporting purposes." App. 29 (Op. 9). That "directly contradicts" Plaintiff's claim that she holds religious beliefs that conflict with the "insertion of foreign matters into [her] body" or the "collection of [her] bodily fluids and reporting results." App. 29 (Op. 9); App. 18 (Am. Compl., Ex. 2).

The Amended Complaint offers no plausible explanation for how the insertion of a nasal swab to collect secretions for purposes of a COVID-19 test presents a conflict when the insertion of a needle to draw blood for purposes of a blood test does not. Plaintiff argues that the district court erred in its analysis of Plaintiff's contradictory allegations. She argues that the district court should have construed the Amended Complaint to allege that there is "foreign material on the end of the nasal swab" (AOB 11) and that inserting a nasal swab for testing is "entirely different than having a sterile needle inserted to extract blood for testing" (AOB 12). But Plaintiff does not plausibly allege either of those facts in the Amended Complaint, and neither the district court nor this Court is required to draw unreasonable inferences to support Plaintiff's

implausible claims. *See Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc.*, 450 F.3d 130, 133 ("[W]e need not credit the non-movant's conclusions of law or unreasonable factual inferences.") (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

Plaintiff argues that "inconsistency is not synonymous with insincerity" and that religious beliefs need not be "logical, consistent or comprehensible to others." AOB 17. But the obvious inconsistency in Plaintiff's allegations is not just relevant to whether her alleged beliefs are sincere, "logical," or "consistent." That inconsistency also demonstrates that Plaintiff's alleged belief is not religious under the second and third prongs of *Africa*. Plaintiff's contradictory allegations demonstrate that her beliefs are not comprehensive and do not include the presence of "formal and external signs" of faith. It is not plausible that Plaintiff's belief was "religious" when Plaintiff's actions are precisely the *opposite* of that belief. Plaintiff's purported belief is, at most, a mere "isolated moral teaching" that is not religious and cannot support a religious discrimination claim. *Fallon*, 877 F.3d at 492.

### 3. Plaintiff's alleged religious objection to differential treatment is an impermissible request for a "blanket privilege."

The balance of Plaintiff's request for exemption from required COVID-19 testing focused on her purported "deeply held religious beliefs" opposing "any treatment which *differs* from that of vaccinated employees, as different treatment amounts to persecution for beliefs." App. 18 (Am. Compl., Ex. 2) (emphasis added). Plaintiff attempted to imbue her perception that she was treated unfairly with a religious dimension by writing that "based on prayer and the Word," she believed that "the new forced mandates reflect authoritative tyranny which is predicted in the Bible as the start of 'End Times'" and "[a]s a Christian, [she] cannot participate in behaviors which support an End Times agenda." App. 18 (Am. Compl., Ex. 2).

Plaintiff's purported beliefs are antithetical to the entire legal framework for religious claims under Title VII and the PHRA, which require employers to treat employees who have religious beliefs that conflict with their job requirements differently by granting them accommodations. Plaintiff's claim that her religious belief "based on prayer and the Word" requires Johnson & Johnson to treat her exactly

the same as other employees who are vaccinated is tantamount to a religious belief that Plaintiff must be permitted to do as she pleases regardless of her employer's policies.

This Court has long recognized that "the very concept of ordered liberty precludes allowing" individuals such "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). Plaintiff's objection to differential treatment and "forced mandates" reflecting "authoritative tyranny" is similarly untenable. "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Id.* at 1035. No doubt Plaintiff has alleged that she objects to required COVID-19 testing because she does not want to submit to such testing, but to say that Johnson & Johnson must exempt Plaintiff from any job requirements with which she disagrees is simply an impermissible attempt to transform "essentially political, sociological, or philosophical" positions into religious beliefs. *Fallon*, 877 F.3d at 490.

Courts in this Circuit and beyond routinely reject such claims. *See, e.g.*, *Blackwell*, 2023 WL 362392, at *8 ("Under *Africa*, this Court is

precluded from allowing any [ ] person, a blanket privilege to make his own standards on matters of conduct in which society as a whole has important interests." (internal quotation marks omitted)); *Finkebeiner*, 623 F. Supp. 3d at 465 (rejecting assertions that "amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted … obligations.'" (quoting *Africa*, 662 F.2d at 1030–31)); *Hand v. Bayhealth Med. Ctr., Inc.*, No. 22-cv-1548-RGA, 2024 WL 359245, at *5 (D. Del. Jan. 31, 2024) ("Forcing Defendant to 'unfailingly respect' any decisions Plaintiff makes by 'pray[ing] and ask[ing] God for wisdom and guidance' would grant her the type of 'blanket privilege' that does not qualify as a religious belief under *Africa*." (quoting *Finkbeiner*, 623 F. Supp. 3d at 465) (collecting cases); *Berna v. Bayhealth Med. Ctr., Inc.*, No. CV 23-945, 2024 WL 456420, at *5–6 (D. Del. Feb. 5, 2024) (granting motion to dismiss where plaintiff "pray[ed] on it"); *Harvey v. Bayhealth Medical Ctr., Inc.*, No. 23-945, 2024 WL 456498, at *4 (D. Del. Feb. 5, 2024) (granting motion to dismiss where Plaintiff "prayed about how to accept the COVID-19 vaccine" and believed "that accepting the vaccine would be a violation of [her] conscious and relationship with God"); *Lucky v. Landmark Med. of Michigan, P.C.*, No. 23-CV-11004, 2023 WL 7095085,

33

at *7 (E.D. Mich. Oct. 26, 2023) (granting motion to dismiss where plaintiff was a "non-denominational Christian that seeks to make all decisions through prayer and that God instructed her through prayer not to receive the COVID-19 vaccine").

Plaintiff argues that the nonreligious elements of her exemption request do not preclude a finding that her objection to testing was religious. *See* AOB 13–15. That's a red herring. The problem with Plaintiff's claim is not that her exemption request had a nonreligious dimension; the problem is that Plaintiff failed to articulate any *religious* reason she could not submit to COVID-19 testing. As a matter of law, Plaintiff cannot transform nonreligious views into religious beliefs simply by claiming that her religion forbids her from doing things she does not want to do. *See Africa*, 662 F.2d at 1031.[4]

---

[4] Plaintiff also suggests that her religious discrimination claim should survive because she was not able to explain her religious beliefs to certain individuals at Johnson & Johnson. *See, e.g.*, AOB 4, 5, 11, 12. But Plaintiff's suggestion is belied by her pleading: the Amended Complaint alleges that Plaintiff was denied meetings in August 2021, *see* App. 8 (Am. Compl. ¶ 9), but it also shows that she submitted a letter explaining her exemption request weeks later, in September 2021, *see* App. 18 (Am. Compl., Ex. 2). Plaintiff clearly had ample opportunity to explain her religious beliefs to Johnson & Johnson. She simply failed to articulate any beliefs that qualify as "religious" as a matter of law, and her religious discrimination claims fail as a result.

**II.    In the alternative, this Court should affirm the dismissal of Plaintiff's religious discrimination claims because the requested accommodation would constitute an undue hardship.**

This Court can affirm "on any ground supported by the record." *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 646 (3d Cir. 2024); *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019) ("We may affirm on any basis supported by the record, even if it departs from the District Court's rationale.").   Accordingly, this Court can affirm the dismissal of Plaintiff's Amended Complaint on the alternative ground that Plaintiff's request for exemption from required COVID-19 testing would work an undue hardship on Johnson & Johnson and its business.

Dismissal on undue hardship grounds is appropriate when "the basis for the [undue hardship] defense is evident on the face of the complaint." *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005); *see also Lowe v. Mills*, 68 F.4th 706, 723 (1st Cir. 2023) (rejecting plaintiff's argument that undue hardship is not suitable for determination on a motion to dismiss, and dismissing plaintiff's failure to accommodate claims because the complaint made clear that granting requested accommodation would have exposed the defendant to penalties).

In *Groff v. DeJoy*, the U.S. Supreme Court held that an employer suffers undue hardship when the "accommodation would result in substantial increased costs in relation to the conduct of [its] particular business." 600 U.S. 447, 470 (2023). To determine whether an employer would suffer undue hardship, courts "take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id.* at 470–71 (alteration in original).

Here, Plaintiff contends that Johnson & Johnson should have allowed her to continue having face-to-face interactions with healthcare providers and cardiovascular patients at the height of the COVID-19 pandemic while she was unvaccinated and not testing whether she had COVID-19. Plaintiff argues that "personal protection equipment, social distancing and/or sanitizing" would have sufficed as an accommodation for Plaintiff's objection to COVID-19 vaccination. App. 9 (Am. Compl. ¶ 13).

Plaintiff's position is untenable. In the context of the global COVID-19 pandemic, the safety risks posed by unvaccinated employees alone constitute an undue hardship to employers. Numerous courts have

so held. *See, e.g.*, *Bordeaux v. Lions Gate Ent., Inc.*, No. 2:22-cv-04244-SVW-PLA, 2023 WL 8108655, at *13 (C.D. Cal. Nov. 21, 2023) ("Accommodating Plaintiff's exemption request would have put the lives of her fellow cast and crew members in danger. … In and of itself, this safety risk constitutes an undue hardship."); *Beickert v. N.Y.C. Dep't of Educ.*, No. 22-cv-5265-DLI-VMS, 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023) ("It is beyond cavil that safety within any work environment … is of absolute importance. … [C]reating a health and safety risk that would have prevented the DOE from fostering a safe educational and work environment … alone would have established an undue hardship"). Johnson & Johnson accordingly had no legal obligation to allow Plaintiff to interact with healthcare providers and vulnerable patients in hospitals and other healthcare facilities while she was neither vaccinated nor even reliably tested for a deadly virus.

In addition, granting Plaintiff's requested accommodation would have damaged Johnson & Johnson's reputation as a global pharmaceutical company, and a supplier of one of the available COVID-19 vaccinations. Courts have recognized such reputational risks are also a significant part of the undue hardship equation. *See, e.g.*, *Adams v.*

37

*Mass Gen. Brigham Inc.*, No. 21-11686-FDS, 2023 WL 6318821 (D. Mass. Sept. 28, 2023) ("An employer's 'los[s] [of] control over its public image' may be a relevant factor [in determining whether an undue hardship exists]." (citing *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 137 (1st Cir. 2004)). It would have been irresponsible to permit Plaintiff to directly interact with healthcare providers and cardiovascular patients—some of whom were immunocompromised—without ever testing to determine whether she had COVID-19.

Because these health, safety, and reputational burdens constitute undue hardship, they provide a complete defense to Plaintiff's failure to accommodate claims that is apparent on the face of the Amended Complaint, and the district court's judgment can be affirmed on that basis, as well.

## CONCLUSION

For all these reasons, the judgment of the district court should be affirmed.

Dated: September 18, 2024

*s/ Emily Cuneo DeSmedt*
EMILY CUNEO DESMEDT
JASON J. RANJO
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540
T. 609.919.6600
F. 609.919.6601

MATTHEW D. KLAYMAN
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA  19103
T. 215.963.5000
F. 215.963.5001

CHRISTOPHER K. RAMSEY
MORGAN, LEWIS & BOCKIUS LLP
301 Grant Street
One Oxford Centre, Suite 3200
Pittsburgh, PA  15219
T. 412.560.3300
F. 412.560.3301

*Counsel for Appellee*

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Emily Cuneo DeSmedt, counsel for Appellee Johnson & Johnson Services Inc., certify, pursuant to Local Appellate Rule 28.3(d), that I am a member in good standing of the Bar of this Court.  I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)–(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Brief of Appellee is proportionately spaced and has a typeface of 14-point Century Schoolbook, contains 7,461 words, and that the text of the electronic brief is identical to the text of the paper copies.  I further certify, pursuant to Local Appellate Rule 31.1(c), that Microsoft Defender did not detect a virus.

Dated: September 18, 2024

_s/ Emily Cuneo DeSmedt_
EMILY CUNEO DESMEDT

## CERTIFICATE OF SERVICE

I, Emily Cuneo DeSmedt, counsel for Appellee Johnson & Johnson Services Inc., certify that, on September 18, 2024, a copy of the foregoing Brief of Appellee was filed electronically through the appellate CM/ECF system with the Clerk of the Court. Pursuant to Local Appellate Rule 31.1, as amended by the April 29, 2013 order, seven copies of this brief were sent to the Clerk of the Court for delivery.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: September 18, 2024          *s/ Emily Cuneo DeSmedt*
                                                  EMILY CUNEO DESMEDT